UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEPHEN A. SCOTT, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Criminal Action No. 06-40006-FDS |
| UNITED STATES, | ) ) ) | |
| Respondent. | ) ) ) | |

**MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO
VACATE, SET ASIDE, OR CORRECT HIS SENTENCE**

**SAYLOR, J.**

This is a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. On October 19, 2007, petitioner Stephen A. Scott was convicted of possession of cocaine with intent to distribute, possession of a firearm with an obliterated serial number, and possession of a firearm by a convicted felon. He now contends that he received ineffective assistance of counsel because his trial counsel (1) failed to make an adequate challenge to the legality of the Massachusetts Parole Board's procedures for obtaining and executing a warrant for temporary custody; (2) essentially "abandoned" him for a 16-month period prior to trial; (3) failed to develop a "coherent" defense strategy; and (4) rendered ineffective assistance at trial by failing to challenge evidence and preserve objections.

For the reasons set forth below, the motion will be denied.

**I.   Background**

The facts are set forth as described in the opinion of the Court of Appeals. *See United*

*States v. Scott*, 566 F.3d 242 (1st Cir. 2009).

In 2004, Stephen Scott was paroled from a Massachusetts prison sentence arising out of a conviction for drug trafficking and unlawful possession of a firearm. In October 2005, an informant told Martin O'Malley, a DEA Task Force officer, that Scott wanted to purchase guns with obliterated serial numbers in exchange for crack cocaine. After determining that Scott had previously been incarcerated, O'Malley began a Task Force investigation and arranged for a controlled buy between the informant and Scott. The buy took place on November 17, 2005. O'Malley subsequently learned that a warrant had been issued for Scott on an unrelated charge and suspended the investigation.

At a monthly meeting with other law enforcement agencies on November 28, 2005, O'Malley confirmed with Massachusetts Parole Officer John Deignan that Scott was on parole. In response to a question from O'Malley, Deignan suggested that the information from the Task Force investigation could be used to justify revocation of Scott's parole, and requested copies of the Task Force report concerning the controlled buy. Deignan later shared this information with Lori Correia, Scott's parole officer.

On December 6, 2005, Correia received a copy of the Task Force report. She discussed it with her supervisor, Felix Claxton, who authorized a state parole warrant for temporary custody ("WTC"). On December 8, 2005, Correia, Deignan, Claxton, and O'Malley went with several Worcester police officers to Scott's apartment, knocked on the door and forcibly entered after receiving no response. The officers found Scott in bed and marijuana in plain view. After advising Scott of his Miranda rights, O'Malley questioned him about additional weapons or drugs in the apartment. Scott stated that there was crack cocaine and a firearm. O'Malley then

obtained a judicial search warrant.  A subsequent search of the apartment discovered crack cocaine and a firearm with an obliterated serial number.

## II. Procedural Background

On February 15, 2006, a grand jury returned a four-count indictment against Scott, charging him with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two); unlawful possession of a firearm with an obliterated serial number, in     violation of 18 U.S.C. § 922(k) (Count Three); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Four).

On September 28, 2006, Scott filed a motion to suppress the evidence seized and statements made during the search of his apartment.  On October 16, 2006, the Court held an evidentiary hearing on the motion to suppress, after which it denied the motion.  Scott filed a renewed motion to suppress on September 13, 2007, which the Court denied on October 1, 2007.

On August 27, 2007, Scott moved *ex parte* for a new attorney.  On September 7, 2007, the Court held an *ex parte* hearing concerning that motion.  However, during the hearing, Scott advised the Court that he wished to keep his attorney.

On October 19, 2007, after a trial, a jury found Scott guilty on Counts One, Three, and Four.  It acquitted him of Count Two, the charge of possession of a firearm in furtherance of a drug trafficking crime.  On February 8, 2008, the Court sentenced Scott to a term of imprisonment of 20 years.

On October 4, 2006, Scott filed a notice of appeal.  He contended on appeal that the Task

Force officers impermissibly influenced the acquisition and execution of the WTC in order to gain access to his apartment without probable cause. On May 21, 2009, the First Circuit affirmed the conviction. *See Scott*, 566 F.3d at 248.

On June 17, 2010, Scott filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docket No. 126).

### III. Analysis

Petitioner contends that he received ineffective assistance of counsel due to the cumulative effect of various errors by his lawyer. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that the deficiencies were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984).

Judicial review of counsel's performance is highly deferential, and there is a presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* at 689. The Sixth Amendment does not guarantee either a perfect or a successful defense. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (stating that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). "It is only where, given the facts at the time, counsel's choice was so patently unreasonable that no competent attorney could have made it, that the ineffective assistance prong is satisfied." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (quotations omitted); *see also Epsom v. Hall*, 330 F.3d 49, 54 (1st Cir. 2003) ("Trial lawyers make countless tactical choices and unless the net reckoning is 'patently unreasonable,' counsel's judgment is not constitutionally defective.").

The second prong of the *Strickland* test requires petitioner to show that counsel's

deficient performance resulted in "prejudice"—that is, that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result was reliable." *Strickland*, 466 U.S. at 687.  Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Sleeper v. Spencer*, 510 F.3d 32, 39 (1st Cir. 2007).

### A. Failure to Challenge the Legality of the Massachusetts Parole Board Procedures for Obtaining the Warrant

Petitioner contends that counsel "failed to preserve a challenge on whether the overall policy of the Massachusetts Parole Board comports with the Fourth Amendment." (Pet. Br. at 8). He argues that this challenge is distinct from the question of whether the parole violation was a subterfuge to permit a search of his home in violation of the Fourth Amendment, which was argued at the suppression hearing in October 2006, and on direct appeal with the First Circuit.

In his reply brief, petitioner contends that courts have "upheld the validity of a warrantless probation or parole search only when law enforcement acted in accordance with [s]tate regulations that have been held constitutional." (Pet. Reply Br. at 6).  He contends that the "discretionary action used in [his] case, therefore can not be reconciled with [federal courts'] consensus of the Fourth Amendment requirements." (*Id.*).  He further states that "the 'discretionary' actions of the Massachusetts parole officer, as applied to [him], were unconstitutional as they were not [the] product of State law or regulation." (*Id.* at 7).

To the extent petitioner is relying on case law concerning warrantless searches, the cases appear to be inapposite.  Here, a parole officer obtained a WTC; officers legally present for the purpose of executing the WTC saw drugs in plain sight, and during questioning petitioner indicated that there were additional drugs and a weapon in the apartment.  Based on that

information, officers then obtained a search warrant for the premises. At no point did officers perform an unauthorized warrantless search of the property.

In any event, petitioner's contention that the Parole Board procedure for obtaining a WTC violates the Fourth Amendment is in substance a facial challenge to that procedure.[1] The statute, Mass. Gen. Laws ch. 127, § 149A, provides that a parole officer who "believes that a parolee has lapsed or is about to lapse into criminal ways or has associated or is about to associate with criminal company or that he has violated the conditions of his parole" may, with the consent of a parole supervisor or other superior officer, issue a warrant for the temporary custody of the parolee.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Parolees are not entitled to the same level of due process as criminal defendants. *See United States v. Collazo-Castro*, 660 F.3d 516, 522-23 (1st Cir. 2011) (holding that the "Fourth Amendment does not require a warrant based on an oath or affirmation to revoke an individual on supervised release").

There is little, if any, case law supporting the contention that the WTC procedure is unconstitutional, and such a motion would have been difficult, to say the least, for counsel to win. The Sixth Amendment does not require that a criminal defense lawyer file *any* motion whose allowance might conceivably benefit his or her client. To the contrary, lawyers are expected to exercise reasonable professional judgment. A lawyer need not file motions on behalf

---

[1] To the extent that petitioner is contending that counsel was ineffective for failing to raise some other challenge to the Massachusetts Parole Board procedures for obtaining a WTC, petitioner has not adequately identified the claim, or demonstrated how counsel was unreasonable for failing to raise it.

of his client that would not likely be allowed. *See United States v. Ortiz*, 146 F.3d 25, 28 (1st Cir. 1998) (finding that counsel's decision not to file a motion was "well within the acceptable range of reasonable professional assistance" where he had "decided against filing a motion he reasonably believed would be of no benefit to his client").

Counsel did not act unreasonably in failing to make a difficult facial challenge to the Masssachusetts WTC statute that in all likelihood would have been unsuccessful. Furthermore, petitioner cannot demonstrate prejudice given the likely outcome of such a motion. Petitioner's claim of ineffective assistance of counsel on that ground will therefore be denied.

### B.     Alleged "Abandonment" by Counsel

Petitioner next contends that he was denied his right to counsel due to counsel's lack of communication with him, which resulted in counsel's failure to assist him in defense preparation or trial strategy. Petitioner argues that counsel effectively "abandoned" him for a sixteen-month period prior to trial.

Prejudice may be presumed if the defendant is denied the assistance of counsel, or if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984). A breakdown in communication that prevents effective representation can result in a constructive denial of counsel. *See United States v. Delmonte*, 444 F. App'x 695, 697 (4th Cir. 2011) (citing *Daniels v. Woodward*, 428 F.3d 1181 (9th Cir. 2005)); *Le v. United States*, 204 F. App'x 812, 818 (11th Cir. 2006). "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). The Sixth Amendment right to counsel does not guarantee a

"meaningful relationship" between the defendant and his counsel. *Id.* at 13-14.

Petitioner's claim of constructive denial of counsel is not supported by the facts. The record does show that counsel and petitioner did not have a flawless relationship, and indeed at one point petitioner filed a motion to dismiss counsel and appoint new counsel. (Docket No. 48). However, at a subsequent hearing on September 7, 2007, petitioner informed the Court that he wished to keep his counsel. (Sept. 7, 2007 Mot. Hearing Trans. at 5). And while some communication problems may have existed between counsel and petitioner, they were not so significant as to impair defense preparation. Counsel contested the detention of petitioner, attempted to negotiate a plea, and filed and argued a motion to suppress, as well as a subsequent a motion for reconsideration. Counsel requested and received several continuances to allow for additional pretrial preparation. Counsel also submitted pretrial filings, including motions in limine and proposed jury instructions, and ultimately secured an acquittal on the charge of possession of a firearm in furtherance of drug trafficking. In short, petitioner received assistance of counsel that was fully adequate to ensure "meaningful adversarial testing." Counsel's performance was constitutionally adequate and does not warrant a presumption of prejudice.

Petitioner's claim of denial of counsel also fails under the *Strickland* standard. Counsel's actions were neither unreasonable nor prejudicial. As noted above, counsel represented his client effectively, filing motions and advocating on his behalf. Petitioner's contention that counsel acted unreasonably by essentially "abandoning" him is contradicted by the record. Petitioner also has not specified how he was prejudiced by counsel's conduct. The claim of ineffective assistance of counsel based on constructive denial of counsel will therefore be denied.

## C. Alleged Failure to Develop a Defense Strategy

Petitioner next contends that counsel failed to develop a defense strategy, investigate the applicable law, and communicate with petitioner. Specifically, he contends that he repeatedly told counsel that he sought a plea agreement and that counsel was ineffective for failing to explore the option of an open plea before the government's filing of a notice of a prior conviction under 21 U.S.C. § 851. Petitioner contends that a rapid guilty plea would have strategically eliminated the possibility of a sentence enhancement in a case such as his, where the § 851 notice was not filed until shortly before trial.

Petitioner's argument seems to suggest that the government would have been unprepared to file a § 851 notice if his counsel had acted with greater dispatch. But that contention is without any support in the record. *See Scott v. United States*, 325 F. App'x 822, 824-25 (11th Cir. 2009) (rejecting claim of ineffective assistance of counsel because petitioner's "argument assumes a non-negotiated plea would have prevented the Government from requesting the § 851 enhancement, but [petitioner] provides no support for this proposition"). Furthermore, a court may "postpone the trial or the taking of the plea of guilty for a reasonable period" to allow the government to file an information setting forth previous convictions if the government can show that such facts could not obtained earlier with due diligence. 21 U.S.C. § 851(a)(1).[2] Petitioner cites to *Harris v. United States*, 149 F.3d 1304 (11th Cir. 1998), in support of his contention. In *Harris*, the Eleventh Circuit held that the district court lacked jurisdiction to enhance a sentence because the government did not strictly comply with the procedural requirements of § 851. The

---

[2] The government may file a § 851 information regarding a prior conviction at any time prior to trial or the entry of a guilty plea. *See Vadas v. United States*, 527 F.3d 16, 21-22 (2d Cir. 2007) (holding that counsel's "failure to point out that the government's plea offer had *not yet* complied with the requirements of § 851, but intended to do so in a timely manner" was not objectively unreasonable (emphasis in original)).

Court had granted the government's request to file a § 851 notice after the change of plea because the government was not expecting to have a change of plea, and consequently was not prepared. *Harris* does not suggest that an open plea is a reasonable strategy for avoiding the filing of a § 851 notice.

Moreover, petitioner does not allege any facts that would suggest that the government was willing to forgo the filing of a § 851 notice. *See Scott*, 325 F. App'x at 824-25 (rejecting petitioner's claim of ineffective assistance of counsel based on counsel's failure to advise him that he could enter a guilty plea without a plea agreement prior to the filing of a § 851 information, where petitioner's brief did not "allege the Government was amenable to such a negotiation in the absence of a cooperation agreement"); *see also United States v. Williams*, 2012 WL 6554424, at *3 (D. Kan. 2012) (finding no prejudice where "there is no evidence that the government would not have filed an § 851 information if defendant had entered an open plea").

In short, counsel was not ineffective for failing to advise petitioner to enter an open plea, as the strategic benefit of such an action would have been questionable at best. Furthermore, counsel acted reasonably in attempting to negotiate a plea based on the expected filing of an § 851 information. Petitioner's claim for relief on this ground will therefore be denied.

### D. Ineffective Assistance During the Trial Process

Finally, petitioner contends that counsel rendered ineffective assistance during trial because he failed (1) to renew a suppression motion at trial and (2) to preserve a Confrontation Clause challenge.

#### 1. Failure to Renew the Suppression Motion at Trial

Petitioner contends that counsel's failure to renew the evidentiary objection at trial barred

him from seeking further appellate fact-finding. (Pet. Br. at 20). On appeal, the First Circuit noted that because the suppression motion was not renewed at trial, review was limited to evidence presented during the suppression hearing. *Scott*, 566 F.3d at 245 (citing *United States v. de Jesus-Rios*, 990 F.2d 672, 675 n.2 (1st Cir. 1993)). Appellate courts are permitted to consider evidence adduced at trial when the denial of a motion to suppress is renewed and considered at trial. *See de Jesus-Rios*, 990 F.2d at 675 n.2.

Again, petitioner cannot demonstrate that counsel acted unreasonably. Counsel filed an unsuccessful motion to suppress, then moved for reconsideration with additional briefing prior to trial. Counsel then preserved the issue for review before the Court of Appeals. Counsel's failure to renew the objection at trial was not unreasonable, as the issue was already preserved for review. Nor has petitioner demonstrated that he was prejudiced by counsel's actions. Petitioner has not pointed to any evidence introduced at trial that would have impacted the First Circuit's denial of his appeal on the motion to suppress. Petitioner's claim for relief on this ground with therefore be denied.

### 2. Failure to Preserve a Confrontation Clause Challenge

Petitioner also contends that counsel failed to object to the admission of evidence from a confidential source. At trial, Officer O'Malley testified that he had received a tip about petitioner from an informant, and he began an investigation based on that information.

The admission of out-of-court, testimonial statements is barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Confrontation Clause does not, however, bar the use of testimonial statements that are used for

purposes other than establishing the truth of the matter asserted. *Id.* at 59 n.9; *see also United States v. Castro-Lara*, 970 F.2d 976, 981 (1st Cir. 1992) (holding that a government agent testifying about receiving a tip from an informant was admissible because it was not offered to prove the truth of the statement, but to provide background information and context about why agents were conducting surveillance at the location). Petitioner's claim that counsel should have objected based on *Crawford* is misplaced, as the statements in question were not offered for the truth of the matter asserted, and therefore are not hearsay and subject to *Crawford*.[3]

Petitioner also contends that counsel was ineffective for failing to make a Confrontation Clause challenge to evidence from a drug laboratory analyst. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (holding that a petitioner had the right to confront forensic analysts who produced affidavits that listed the identity and weight of seized drugs). Petitioner's Confrontation Clause claim under *Melendez-Diaz* is clearly contradicted by the record. The DEA forensic chemist, Noel Vadell, testified at trial on her analysis of the drugs and was cross-examined by defense counsel. (Trial Trans. Day 3 at 10-21). Petitioner's claims for relief based on the Confrontation Clause are meritless, and will therefore be denied.

### E.  Motion for a Hearing

In his reply brief, petitioner requested an evidentiary hearing. Petitioner contends that the factual record regarding counsel's investigation and research is inadequate. Specifically, he contends that the "issue of whether Scott was subject to a regulation as mandated by *Griffin* has

---

[3] Testimony about the confidential source was not elicited by the government on direct examination of Officer Martin O'Malley. Defense counsel first raised the existence of the informant on cross-examination to suggest that the information from the informant was unreliable. (Trial Trans. Day 2 at 70). On re-direct examination, counsel for the government requested a sidebar to notify defense counsel and the Court that he intended to ask questions about the informant. (*Id.* at 97-98). The Court noted that defense counsel had opened the door to such questioning and gave a warning instruction to the jury that petitioner was not on trial for conduct described by the informant, and the information was to be used only in assessing the credibility of the witness.

not been answered on the case record." (Pet. Reply Br. at 19).

A petitioner bringing a § 2255 motion bears the burden of establishing the need for an evidentiary hearing. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). An evidentiary hearing is not required "where the district judge is thoroughly familiar with the case as, for example, when he presides at both a change of plea hearing and sentencing." *Ouelette v. United States*, 862 F.2d 371, 377 (1st Cir. 1988).

Petitioner's claim of ineffective assistance of counsel based on the legality of the Parole Board Procedures is without merit, as discussed above. Even assuming the truth of petitioner's factual contentions, his claim for relief would still fail. Therefore, no evidentiary hearing on counsel's investigation and research is necessary. Accordingly, petitioner's request for an evidentiary hearing will be denied.

## IV.    Conclusion

For the foregoing reasons, petitioner's motion to vacate, set aside or correct his sentence is DENIED, and the petition is DISMISSED. Petitioner's motion for an evidentiary hearing is also DENIED.

**So Ordered.**

Dated: March 18, 2013

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge